UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAYON J. FIPS,                                )
                                             )
                    Petitioner,              )
                                             )
          v.                                 )        Case No. 4:22-cv-00402-SRC
                                             )
UNITED STATES OF AMERICA,                    )
                                             )
                    Respondent.              )

**Memorandum and Order**

Dissatisfied with his 20-year sentence, Petitioner Dayon J. Fips, proceeding pro se, seeks

to have his sentence vacated under 28 U.S.C. § 2255.    Fips asserts four claims:    1) ineffective

assistance of counsel, 2) actual and factual innocence, 3) prosecutorial misconduct, and 4)

conflict-of-interest error by the Court.    Upon review, the Court finds that all four claims lack

merit.    As such, the Court finds that Fips is not entitled to an evidentiary hearing or relief under

section 2255.    The Court also denies Fips's motion to conduct discovery.

I.      **Statement of facts**[1]

On July 31, 2018, Florissant Police responded to a reported overdose in the 1700 block

of Saint Denis Street in Florissant, Missouri.    Upon their arrival, officers located N.B.

unresponsive.    N.B.'s father, who first discovered N.B., administered Narcan in an effort to

save N.B.    However, his efforts and the efforts of emergency medical personnel were

unsuccessful, and N.B. was pronounced deceased.

A search of N.B.'s bedroom revealed two syringes, a spoon, and remnants of a white-

powder substance on a desktop.    Investigators also located N.B.'s cellular telephone in his front

---

[1] This section is materially identical to the "Facts" section in Fips's Guilty Plea Agreement.    *See United States v. Dayton J. Fips,* Case No. 4:18-cr-00720-SRC, Doc. 92 at § 4.

pants pocket.    With his parents' permission, investigators analyzed N.B.'s cellular telephone.

During their review of the cellular telephone, investigators discovered that during the afternoon

hours on July 31, 2018, N.B. contacted an unknown subject at the phone number XXX-XXX-

5347 several times.    Detectives also learned that N.B. had a geolocation application on his

cellular telephone that recorded the physical location of that device at all times.    The

geolocation application indicated that N.B. was at a Bank of America on New Halls Ferry Road

shortly before his death.    N.B. made a recording of the last telephone call made to XXX-XXX-

5347.    In the call, N.B. requested that the user of XXX-XXX-5347 transport him (N.B.) to the

Bank of America.    The person utilizing XXX-XXX-5347 agreed.

Information retrieved from N.B.'s call log revealed that his last telephone contact with

XXX-XXX-5347 occurred at 2:26 p.m.    The geolocation application revealed that N.B. left his

home at 2:28 p.m. and returned home at 3:06 p.m.    N.B.'s father made the 911 call

approximately 90 minutes later.    N.B. did not leave the family residence during that 90-minute

period.

Investigators responded to the Bank of America on New Halls Ferry Road.    They noted

that the business next door had surveillance cameras that captured a portion of the Bank of

America parking lot.    They obtained the surveillance footage from the afternoon of July 31,

2018, which depicted a white Dodge Charger with a red stripe on the side arriving in the bank

lot.    After the white Charger parked, N.B. exited the passenger side and walked out of view of

the camera.    Minutes later, N.B. emerged again and entered the passenger side of the white

Charger, which then departed the Bank of America parking lot.

Following N.B.'s death, Florissant Police applied for and received a search warrant for

telephone records associated with XXX-XXX-5347.    Information obtained from the service

provider revealed that the phone was subscribed to Dayon Fips.    According to these records,

N.B. called Fips over 500 times between June 1 and July 31, 2018, and Fips called N.B. over 100 times.    There was a total of six calls between Fips and N.B. on July 31, 2018.

Florissant Police cultivated a confidential informant capable of purchasing drugs directly from Fips.    At the direction of investigators, this informant—who knew Fips as "Tre"— contacted Fips at telephone number XXX-XXX-5347 and made two separate controlled drug purchases from Fips.    At the conclusion of both occasions, surveillance officers watched Fips return to his residence in the 8800 block of Harold Drive in Berkeley, Missouri.    During one of the controlled purchases, Fips drove a white Dodge Charger with a red stripe.

On August 22, 2018, Florissant Police executed a search warrant at Fips's residence in the 8800 block of Harold Drive.    Fips was present in the residence at the time.    During the search, investigators recovered a heroin/fentanyl mixture, fentanyl, and the following:

   a.      Approximately $17,981.00 U.S. Currency,

   b.      Smith and Wesson M&P Bodyguard .380 caliber pistol, serial number KDY0806,

   c.      HS Products XDM model .40 caliber pistol, serial number MG368332,

   d.      Taurus PT24/7 Pro LS .40 caliber pistol, serial number SA T52288,

   e.      Ruger model 9E, 9 mm pistol, serial number 337-75251,

   f.      CZ (Ceska Zbrojovka) model ZC75 D, 9 mm pistol, no serial number,

along with a cellular telephone corresponding to telephone number XXX-XXX-5347. Investigators also located multiple bullet-proof vests.

Law enforcement arrested Fips and advised him of his Miranda rights, which he waived. During a video-recorded interview, Fips was shown a photograph of N.B.    Fips acknowledged that he knew N.B., and that he had sold drugs to N.B. on multiple occasions.    Fips listened to the telephone call captured on N.B.'s telephone on July 31, 2018, and identified his voice as the person to whom N.B. was speaking.    Fips acknowledged that he had agreed to take N.B. to the

Bank of America on July 31, 2018, and that he had drove the white Dodge Charger with the red stripe visible on the surveillance video from the adjacent business.    Fips confirmed that XXX-XXX-5347 was his phone number.    When asked, Fips acknowledged that he is aware that he is not permitted to purchase or possess a firearm because he is a convicted felon.

The CZ (Ceska Zbrojovka) model ZC75 D, 9 mm pistol was manufactured in Czechoslovakia and therefore necessarily traveled in interstate and foreign commerce prior to its seizure on August 22, 2018.    None of the bullet-proof vests seized from Fips's home were manufactured in the State of Missouri and therefore necessarily traveled in interstate commerce prior to their seizure.

In August 2019, while incarcerated in the Jennings Jail as a pretrial detainee in the custody of the United States Marshals Service, Fips received an in-person visit from his girlfriend, R.M.    As R.M. prepared to leave the facility, Fips passed her a handwritten letter consisting of four pages.    Corrections personnel at the Jennings Jail reviewed the letter, consistent with their policy regarding outgoing correspondence, and upon reading its contents, provided a copy to the United States Marshals Service.    Fips wrote the letter to an unnamed male recipient.    Fips instructed R.M. to give the letter to the unnamed male.    The letter contained detailed instructions to the unnamed male.    More specifically, the letter instructed, "I need you to get that bitch to make that video for me saying that she feels bad about my situation, and that the police made her lie and say that she purchased drugs from me and that they planted drugs and lied."    Further, the letter states that the female should be "crying on the video saying that the Florissant Detectives threatened to get her P.O. to lock her up and she would be dope sick if she didn't set Tre up, and that the detective planted drugs on her when they acted like they was searching her, so she only gave the police the drugs that they gave her Tre didn't sell her drugs."    In the letter, Fips detailed that the video must be made "like she does not know that she

4

is being secretly recorded and that she is just venting cause she is feeling bad, but she got to make it like she don't know that she is being recorded and make it look good."   The letter contained the nickname and suspected telephone number of the confidential informant who made the two controlled drugs purchases from Fips during the investigation.

After learning of the letter, Florissant Police contacted R.M.   Detectives retrieved the original four-page letter described above, along with an additional letter written to R.M. from R.M.'s possession.   In that letter, Fips explained that he needs R.M. to "see what's up with that chick and try to get that video made."   He advised R.M. that "I will have a letter for lil bro Wensday [sic], but I want you to check that number for me from somebody else's phone just to see if it's still an open line on her babe, the number is \*\*\*-\*\*\*\*, check from somebody else's line."

## II.   Procedural history[2]

Based on the foregoing conduct, in August 2018, the United States, by way of criminal complaint, charged Fips with one count each of:   1) possession with intent to distribute a mixture or substance containing heroin in violation of 21 U.S.C. § 841(a)(1), 2) felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and 3) knowingly possessing one or more firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Doc. 1.   The Court[3] appointed Kenneth Schwartz to represent Fips.   Doc. 8.   A week later, a federal grand jury indicted Fips on Count 1, possession with intent to distribute a mixture or substance containing heroin in violation of 21 U.S.C. § 841, Count 2, knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and Count 3, felon in possession of a firearm in violation of 18 U.S.C. § 922(g).   Docs. 13–14.

---

[2]  The "Doc." numbers used in the "Procedural history" section are from *United States v. Dayon Fips,* Case No. 4:18-cr-00720-SRC, unless otherwise specified.

[3]  United States Magistrate Judge Noelle C. Collins

In January 2019, Schwartz moved to withdraw as Fips attorney.    Doc. 31.    Schwartz

indicated that:

    1.      Issues of conflict have arisen between defense counsel and [Fips].

    2.      Counsel does not believe that the relationship between counsel and [Fips]
            can be salvaged and believes that the appointment of new counsel would be
            in the best interests of [Fips].

*Id.*   The Court[4]  allowed Schwartz to withdraw and appointed Eric Butts to represent Fips.

Docs. 31–35.

In February 2019, a grand jury returned a superseding indictment against Fips, adding

Count 4, felon in possession of body armor in violation of 18 U.S.C. § 931(a)(1) and Count 5,

distribution of a controlled substance resulting in death in violation of 21 U.S.C. § 841(a)(1).

Docs. 39–40.    In April 2019, the grand jury returned a second-superseding indictment, changing

Count 1 to possession with intent to distribute a mixture or substance containing fentanyl in

violation of 21 U.S.C. § 841(a)(1) and adding a forfeiture allegation seeking the forfeiture of

nearly $18,000 in cash seized from Fips's residence at the time of the execution of the search

warrant.   Docs. 52–53.

In May 2019, Fips retained private counsel, Mark Hammer, resulting in Butts's

withdrawal.   Docs. 59–60.    Three months later, Hammer moved to withdraw as counsel for

Fips.   Docs. 73.    Hammer stated:

    1.      [Fips] has asked counsel to withdraw as his attorney.

    2.      Irreconcilable differences have arisen between counsel and [Fips].

    3.      Counsel does not believe that the professional relationship between counsel
            and [Fips] can be repaired sufficient to enable counsel to effectively
            continue to represent [Fips].

---

[4] United States Magistrate Judge David D. Noce

*Id.*   The Court[5] allowed Hammer to withdraw and appointed Joseph Hogan to represent Fips. Docs. 73–76.   Hogan, Fips's fourth attorney, represented Fips through his guilty plea, sentencing, and appeal.   Doc. 108.

In August 2019, a grand jury returned a third-superseding indictment additionally charging Fips with Count 6, knowingly and intentionally attempt to corruptly persuade another person with the intent to influence, delay, and prevent the testimony of such person in an official proceeding in violation of 18 U.S.C. § 1512(b)(1).   Doc. 79–80.

Fips waived filing of pretrial motions in September 2019.   Doc. 88.   In October 2019, the Court held a change-of-plea hearing.   Doc. 91.   At the hearing, Fips pleaded guilty to Count 3, felon in possession of a firearm, Count 4, felon in possession of body armor, Count 5, distribution of a controlled substance resulting in death, and Count 6, witness tampering with intent to persuade and influence.   In exchange, the United States agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that Fips would receive a sentence of 240 months' imprisonment.   Doc. 92.   The United States also agreed to dismiss Count 1, distribution of fentanyl, and Count 2, possession of a firearm in furtherance of a drug trafficking crime, at sentencing.   Doc. 92.   Additionally, Fips "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."   Doc. 92 at p. 14.

Prior to accepting Fips's plea, the Court conducted a comprehensive colloquy as required by Rule 11 of the Federal Rules of Criminal Procedure.   *See* Doc. 98.   Fips acknowledged that he:   1) read the plea agreement "well in advance" of the plea hearing, 2) had an opportunity to go over the plea agreement with his counsel and ask questions, and 3) freely and voluntarily

---

[5] United States District Judge John R. Ross

7

signed the plea agreement.   *Id.,* Plea Tr. 12:19–13:4.    As to Count 5, which is relevant to

Fips's instant motion, the Court advised Fips as follows:

> Then as to Count 5, the elements of that offense are the following:    First, that on
> or about July 31, 2018, within the Eastern District of Missouri, you distributed a
> controlled substance to a person again whose initials are N.B.    Second, that you
> did so knowingly and intentionally.    Third, that that person N.B. thereafter
> ingested the controlled substances.    Fourth, that that person, N.B., died as a result.
> And fifth, that N.B. would not have died but for the ingestion of the controlled
> substances distributed to him by you.    So those are the elements of Count 5.

*Id.,* Plea Tr. 17:16–25.    When asked if he understood the elements of Count 5, Fips replied

"Yes, sir."   *Id.,* Plea Tr. 18:1.    When the Court asked: "Do you agree that you did those things;

is that correct?"   *Id.,* Plea Tr. 18:3.    Fips again responded, "Yes, sir." *Id.,* Plea Tr. 18:4.

Two days after the change-of-plea hearing, Judge Ross recused himself from the case

and it was reassigned to the undersigned.    Docs. 95–96.    Judge Ross's order stated: "Upon

further review and consideration I have determined that I should disqualify myself from this case

to avoid any potential appearance of impropriety."    Doc. 95.

U.S. Probation issued a presentence investigation report in advance of Fips's sentencing

in January 2020.    Doc. 104.    The PSR calculated Fips's total offense level as 40, which

accounts for a two-level deduction for acceptance of responsibility, and his criminal history

category as VI due to his career offender status.    *Id.* at ¶¶ 34–40, 53.    A total offense level of

40, combined with a criminal history category of VI, results in a guideline imprisonment range

of 360 months to life.    However, Fips and the United States entered into a binding-plea

agreement with an agreed upon sentence of 240 months:

> Pursuant to Rule 11(c)(l)(C), Federal Rules of Criminal Procedure, the parties agree
> that [Fips's] sentence should be 240 months.    This agreement shall abide,
> notwithstanding the application or non-application of any particular Sentencing
> Guidelines, including any Guidelines contemplated by this agreement.    If the
> Court informs the parties prior to sentencing that it will reject this agreement or that
> it intends to sentence defendant to a sentence not in conformity with this agreement,

then either party may withdraw from the plea agreement and [Fips] will have an opportunity to withdraw his guilty plea pursuant to Rule 11(c)(5).

Doc. 92. at p. 2.

Pursuant to the parties' binding-plea agreement, in January 2020, the Court, sentenced Fips to 240 months' imprisonment followed by a three years' supervised release.    Doc. 110. Fips appealed his conviction, arguing that he received constitutionally defective assistance of counsel from his former attorney Mark Hammer.    Doc. 113.    The Eighth Circuit rejected Fips's argument, finding that Fips had knowingly and voluntarily waived his right to appeal, and that no miscarriage of justice would result from enforcement of the waiver.    *United States v. Fips*, 834 F. App'x 293 (8th Cir. 2021).

On April 5, 2022, Fips filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255.    *Fips v. United States,* Case No. 4:22-cv-00402, Docs. 1, 4.    In his motion, Fips makes four claims.    *Id.*    First, Fips claims that he received ineffective assistance of counsel in connection with his guilty plea and direct appeal.    *Id.*    Second, Fips claims that he is "actually and factually innocent of distributing a [sic] straight fentanyl that resulted in the death of another person."    *Id.*    Third, Fips claims that the United States engaged in prosecutorial misconduct. And lastly, Fips claims that the Court "committed error when it failed to remove itself from the case because of the conflict of interest."    *Id.*

## III.    Standard of review

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."    28 U.S.C. § 2255(a).    To obtain relief under section 2255, the petitioner must establish a constitutional or federal statutory

9

violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003).

Claims brought under section 2255 may be limited by procedural default.   A petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994).   However, the Eighth Circuit has noted in dicta in two cases that, if the error claimed by a petitioner is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis. *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis."); *but see Tripp v. United States*, No. 1:11CV00118 ERW, 2012 WL 27930 (E.D. Mo. Jan. 5, 2012) ("constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'") (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)); *Snider v. United States*, No. 4:09CV1171 HEA, 2011 WL 6372345 (E.D. Mo. Dec. 20, 2011) (same).

Ineffective-assistance-of-counsel claims may be raised for the first time in a section 2255 motion even if they could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).   This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.*   Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *United States v. Sera,* 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).   A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo*, 223 F.3d at 925.   An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland,* at 687–88; *Sera*, 267 F.3d at 874.   Two substantial impediments exist to making such a showing.   First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874.   Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690).   Similarly, counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

If the petitioner's claims are not procedufrally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"   28 U.S.C.A. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).   A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted).   However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

## IV.    Discussion[6]

### A.    Claims of ineffective assistance of counsel and innocence

First, the Court notes for clarification that Fips was not charged with distributing heroin or fentanyl resulting in the death of N.B.; the United States charged Fips with distributing *a controlled substance* to N.B. that resulted in his death.    Doc. 80 at p. 3.    Although the United States is required to prove that Fips "knowingly and intentionally distributed a controlled substance to N.B." on July 31, 2018, 21 U.S.C. § 841(b)(1)(C) "requires only that death . . . result[] from an intentional or knowing sale of *any* controlled substance, not knowledge or intent as to the actual substance causing death." *United States v. Simer*, 835 F. App'x 60, 67 (6th Cir. 2020); *see also United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003) (citations omitted) (holding that the government need not prove "mens rea as to the type and quantity of the drugs" sold to establish a violation of § 841); *United States v. Thornton*, 822 F. App'x 397, 406 n.1 (6th Cir. 2020) (citing *McFadden v. United States*, 576 U.S. 186, 191 (2015)) (rejecting a sufficiency challenge to a § 841(b)(1)(C) enhancement based on the government's failure to prove defendant knew he was selling carfentanil, as defendant must know only that the substance he is selling is, in fact, a controlled substance).    Fips acknowledges that he knew N.B. and has sold drugs to N.B. on multiple occasions.    Doc. 92 at p. 7; Doc. 98, Plea Tr. 23:6–9.    Fips also admitted to distributing a controlled substance to N.B. on or about July 31, 2008.    Doc. 92 at p. 4; Doc. 98, Plea Tr. 17:16–18:4.

Fips makes a variety of claims that his fourth attorney, Joseph Hogan, provided ineffective assistance during the critical stages of his plea and direct appeal.    Doc. 4 at p. 1. To show ineffective assistance of a counsel during the plea state, Fips must establish that:    "(1)

---

[6] "Doc. 4," "Doc. 11," and "Doc. 16" used in the "Discussion" section are from *Dayton Fips v. United States,* Case No. 4:22-cv-00402.    All other "Doc." numbers used in the "Discussion" section are from *United States v. Dayon Fips,* Case No. 4:18-cr-00720-SRC.

counsel's performance fell below the *Strickland* standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, [Fips] would not have pleaded guilty but would have proceeded to trial."   *See United States v. Davis,* 508 F.3d 461, 463 (8th Cir. 2007) (citing *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985).   Fips fails to establish either requirement.

First, "Fips claims that his guilty plea was not 'knowing' or 'intelligent' and, therefore, constitutionally invalid."   Doc. 4 at p. 5; Doc. 16 at p. 6.   Basically, Fips implies that his guilty plea was not "knowing" or "intelligent" because of Hogan's ineffective assistance.   *See* Doc. 4 at p. 5.   However, the record reflects the contrary.   At the change-of-plea hearing, Fips acknowledged that he:   1) read the plea agreement "well in advance" of the plea hearing, 2) had an opportunity to go over the plea agreement with his counsel and ask questions, and 3) freely and voluntarily signed the plea agreement.   Doc. 98, Plea Tr. 12:19–13:4.   When asked: "Do you have any questions about anything . . . in the plea agreement," Fips responded with "No, sir."   *Id.,* Plea Tr. 36:17–20.   When asked if he was entering into the plea agreement "feely and voluntarily," Fips responded with "Yes, sir."   *Id.,* Plea Tr. 36:21–23.

Fips made no effort to withdraw his guilty plea following his change-of-plea hearing. At sentencing, the Court asked:   "Mr. Fips, when you pled guilty, you confirmed to the Court under oath that you pled guilty to Counts [3] through [5] of the third superseding indictment in this case because you are, in fact, guilty as charged; is that correct?"   Fips responded with "Yes, sir."   Doc. 121 at 3:4–8.   When the Court asked:   "And you entered that plea of guilty knowingly and voluntarily because you are, in fact, guilty as charged; correct?"   Fips again responded with "Yes, sir."   *Id.* at 3:9–12.   Nothing in the record supports Fips's assertion that he did not freely, voluntarily, and intelligently enter into the plea agreement.   The Court therefore cannot conclude that Hogan's performance fell below the *Strickland* standard of reasonableness; to the contrary, the Court finds that Hogan's performance met the standard.

13

Second, Fips claims that Hogan "was constitutionally ineffective because he allowed [Fips] to plead guilty without ever receiving notice of an essential element of the offense—that the [United States] would have to prove that the drugs [Fips] distributed ('Heroin and Fentanyl Mixture') was the but-for cause of N.B.'s death."    Doc. 4 at p. 5.    Again, Count 5 of the third-superseding indictment charges Fips with "knowingly and intentionally distribut[ing] *a controlled substance* to N.B. . . . and that the death of N.B. resulted from the use of such controlled substance distributed by [Fips]."    *Id.* (emphasis added).    Section three of the plea agreement outlines the elements of each of the offenses to which Fips pleaded guilty, including Count 5:

> As to Count [5, Fips] admits to knowingly violating Title 21, United States Code, Section 841(a)(l), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:
>
> 1.  That on or about July 31, 2018, within the Eastern District of Missouri, [Fips] *distributed a controlled substance* to N.B., and;
>
> 2.  That he did so knowingly and intentionally, and;
>
> 3.  That N.B. thereafter ingested the controlled substance, and;
>
> 4.  That N.B. died as a result, and;
>
> *5.*  That N.B. would not have died *but for* the ingestion of the controlled substance distributed to him by [Fips].

Doc. 92 at p. 4 (emphasis added).    The Court also advised Fips of the elements at the change-of-plea hearing:

> Then as to Count 5, the elements of that offense are the following:    First, that on or about July 31, 2018, within the Eastern District of Missouri, you *distributed a controlled substance* to a person again whose initials are N.B.    Second, that you did so knowingly and intentionally.    Third, that that person N.B. thereafter *ingested the controlled substance*.    Fourth, that that person, N.B., died as a result. And fifth, that N.B. would not have died *but for* the ingestion of the controlled substances distributed to him by you.    So those are the elements of Count 5.

Doc. 37, Plea Tr. 17:16–25 (emphasis added).   The Court then asked:   "Do you understand those elements; is that correct?"   *Id.,* Plea Tr. 17:25–18:1.   Fips responded with "Yes, sir." *Id.,* Plea Tr. 18:2.   A review of the record shows that Fips's assertion that he was unaware of the "but-for-cause" element is meritless as the signed plea agreement included the elements and Fips and the Court discussed them on the record at the change-of-plea hearing.

Third, Fips claims that Hogan provided ineffective assistance by failing to adequately investigate his case prior to giving advice on whether to plead.   Doc. 4 at p. 6.   Fips contends that "[Hogan] advised him to enter a plea of guilty pursuant to a plea agreement with the [United States] without full discovery or any knowledge of the evidence upon which the [United States] would rely were the case to proceed to trial."   *Id.* at p. 7.   However, the Court finds that the record reflects the contrary.   Section four of the plea agreement specifically sets forth the facts that the parties (both Fips and the United States) agree the United States could prove beyond a reasonable doubt if the case were to go to trial.   Doc. 94 at pp. 5–10.   Additionally, the United States filed a Motion for Pretrial Determination of Admissibility of Arguably Suppressible Evidence and Disclosure of Arguably Suppressible Evidence Pursuant to Federal Rule of Criminal Procedure 12(b)(4), which outlines the evidence that the United States intended to use at trial:

> At trial, the [United States] intends to use the evidence seized in the aftermath of the overdose death of N.B. on July 31, 2018.   This evidence is fully set forth in investigative reports prepared by the Florissant Police Department, which have been made available to [Fips], and which will be supplemented on an ongoing basis. These materials include, but are not limited to: a report of investigation, a Report of Post-Mortem Examination (including cause/manner of death), witness statements, photographic line-ups shown to multiple witnesses, and scene photographs. The materials also include (and reference) the execution of one or more search warrants for information and records related to cellular telephones, including at least one telephone utilized by [Fips].   A separate search warrant was obtained for [Fips's] residence.   That search warrant was executed on August 22, 2018 and resulted in the seizure of items of physical evidence giving rise to the charges in Counts I-IV.   Lastly, the [United States] has provided defendant with a

copy of a recorded, post-*Miranda* interview in which defendant made substantial incriminating statements. . . .

Doc. 47 at p. 1–2. Further, the United States confirmed that they provided Fips all discovery legally required, and Fips himself cites to the toxicology report. Doc. 135 at 3:3–25; Doc. 16 at p. 10.

Fips also claims that the record does not support that he distributed fentanyl, and therefore, Hogan was constitutionally ineffective for allowing Fips to plead guilty to causing the death of N.B. when the United States knew that he did not distribute fentanyl to the victim. Doc. 4 at p. 10. However, Fips admits that he distributed a mixture of heroin and fentanyl in his plea agreement, multiple times in his motion, and in his reply. *See* Doc. 92 at p. 7 ("During the search, investigators recovered a heroin/fentanyl mixture . . . ."); Doc. 4 at p. 10 ("It was then determined that the suspected controlled substances acquired from [Fips] was a mixture of heroin and fentanyl."); *id.* at p. 11 ("But the record is very clear that [Fips] in this case was only distributing a 'heroin/fentanyl mixture,' . . . What the record does support is that [Fips] was selling a heroin/fentanyl mixture . . . ."); *id.* at p. 12 ("Had counsel investigated or studied the facts relevant to the case, he would have discovered that [Fips] was not in fact distributing fentanyl but was in fact distributing 'heroin' which was later found to be a 'heroin/fentanyl mixture' after the drugs were tested . . . ."); Doc. 16 at p. 13 (". . . Fips freely acknowledges [it] was a heroin/fentanyl mixture . . . ."). Fips acknowledged that the facts in the plea agreement are all true and correct, and that he did those things at both his change-of-plea hearing and his sentencing hearing.

Several of Fips's claims are based on his assertion that he did not distribute straight fentanyl to N.B. Doc. 4 at p. 14; Doc. 16 at pp. 26–27. Fips argues that because no heroin was found in N.B. shows that the drugs that killed N.B. came from somewhere else because his drugs contained heroin. Doc. 16 at p. 13–14. Fips states that he knows that his drugs

16

contained heroin "because a drug dealer does not change the choice of drugs that he has been

distributing."   Doc. 16 at p. 27.   As the United States points out, unless Fips regularly had his

drugs tested at accredited crime laboratories, which Fips has not provided any evidence of, it is

absurd to suggest that Fips had any idea what drugs he sold on any particular occasion.   Doc. 11

at p. 23.

Again, whether or not Fips *knew* that he sold fentanyl on July 31, 2018 is immaterial as

the United States is not required to prove that Fips knowingly sold N.B. fentanyl, heroin, or a

mixture of the two.   The United States must merely show that Fips knowingly sold N.B. a

controlled substance, which Fips admitted to, and that the ingestion of that controlled substance

resulted in N.B.'s death.

Fips also argues that "because he was not with N.B. when he died, and because he was

not in position to know whether N.B. had consumed any other drugs that might have been the

cause of his death, he could not have known at the time of his plea whether the drugs he provided

were a but-for cause of N.B.'s death."   Doc. 16 at pp. 9–10.   Fips cites to *Coleman v. Terris* in

support of his argument and quotes a portion:

> The factual basis for Coleman's plea indicated that two drug users [Jolly and
> McElmurry] died of a drug overdose at some point after ingesting a substance
> provided by Coleman.   Coleman also admitted at the plea hearing that he later
> found out the decedents "died from" the drugs he sold, but Coleman was not with
> either decedent at the time of death, nor did Coleman necessarily have a basis for
> knowing whether or not the decedents had ingested other drugs.   There was no
> factual finding as to whether Coleman's drugs were the "but-for" cause of death or
> serious bodily injury.

No. 19-1886, *3 (6th Cir. April 24, 2020).

Several factors distinguish Fips's case from Coleman's.   First, at the time of Coleman's

conviction, the United States was not required to prove that the delivery of drugs was a but-for

cause of death to sustain the sentencing enhancement under § 841(b)(1)(c).   *Coleman v. Terris*,

No. 2:18-CV-10805, 2021 WL 4319717, *1 (E.D. Mich. Sept. 23, 2021).   That changed with

the Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204 (2014), which came down several years before Fips's case.   Under *Burrage*, to sustain the sentencing enhancement, the United States must prove that the delivery of drugs was either: (a) an independent, sufficient cause of the victim's death, or (b) a but-for cause.   *See United States v. Allen*, 716 F. App'x 447, 450 (6th Cir. 2017).   The Sixth Circuit found that Coleman's statements during the plea hearing did not provide a sufficient basis for overcoming his *Burrage* claim, and the Court erred in failing to order production of the records related to cause of death.   *Coleman,* No. 19-1886, *3.   On remand, the district court ordered the United States to produce the autopsy and toxicology reports for the decedents.   *Coleman,* 2021 WL 4319717, *2.

    After a review of the records, the United States conceded that Coleman was entitled to habeas relief with respect to McElmurry, as the autopsy report indicated that McElmurry died in the hospital after he survived there for about a week following his overdose.   *Id.*   The report also found the cause of death was "drug abuse and complications," with a contributory cause related to his morbid obesity, and an "undeterminable" manner of death.   *Id.,* *3.   In light of the United States' concession, and with no evidence otherwise suggesting that drugs provided by Coleman were a but-for cause of McElmurry's death, the district court vacated Coleman's sentence as to McElmurry.   *Id.,* at *5.   With respect to Jolly, the district court upheld Coleman's conviction as the toxicology reports documented fentanyl as the cause of death.   *Id.,* at *5–8.   Similar to Fips, Coleman argued that he believed that he was distributing heroin, but the district court didn't find that argument persuasive when considering all the evidence.   *Id.*

    *Coleman* does not support Fips's claim of innocence by virtue of not being with N.B. at the time he died.   Although Fips was not with N.B. then, Fips admitted that he knew N.B., had sold him drugs on multiple occasions, and drove N.B. to Bank of America on the day of his death.   Doc. 92 at p. 7.   Additionally, Fips's plea agreement includes the but-for finding, as

required by *Burrage,* and at the change-of-plea hearing, the Court advised Fips of the but-for
element in the plea agreement:

> Then as to Count 5, the elements of that offense are the following:   First, that on
> or about July 31, 2018, within the Eastern District of Missouri, you distributed a
> controlled substance to a person again whose initials are N.B.   Second, that you
> did so knowingly and intentionally.   Third, that that person N.B. thereafter
> ingested the controlled substances.   Fourth, that that person, N.B., died as a result.
> And fifth, that N.B. would not have died but for the ingestion of the controlled
> substances distributed to him by you.   So those are the elements of Count 5.

*Id.,* Plea Tr. 17:16–25.   When asked if he understood the elements of Count 5, Fips replied

"Yes, sir."   *Id.,* Plea Tr. 18:1.   When the Court asked: "Do you agree that you did those things;

is that correct?"   *Id.,* Plea Tr. 17:25–18:3.   Fips again responded, "Yes, sir." *Id.,* Plea Tr. 18:4.

Finally, the State Medical Examiner described the immediate cause of death as acute intoxication

with fentanyl, acetyl fentanyl and methadone (i.e., a drug overdose), unlike the "undeterminable"

death of a defendant in *Coleman*.   Doc. 16 at p. 10.

    In sum, Court rejects Fips's actual innocence claims as they are unsupported and belied

by the guilty plea agreement and his statements made under oath.   Additionally, the Court finds

that defense counsel did not provide ineffective assistance by failing to raise such claims.   Fips

implicated himself in criminal conduct immediately following his arrest.   After consultation

with his fourth attorney, he knowingly and voluntarily admitted all of the elements of his offense

and pleaded guilty in a binding-plea agreement that if accepted guaranteed him a sentence of 20

years.   His option was to gamble at trial and face a guidelines range of 30 years to life if

convicted.

### B.    Prosecutorial misconduct

    Fips next argues that the United States "has intentionally or recklessly misled the court

about the true facts of the case, that is, that a [sic] straight fentanyl, the very kind that caused the

death of [N.B.] was never found in Fips's residence on August 22, 2018."   Doc. 4 at pp. 15–16.

Fips contends that the United States falsely added in the fact section of his plea agreement that investigators located fentanyl in his residence.   *Id.* at p. 16; *see also* Doc. 92 at p. 7 ("During the search, investigators recovered a heroin/fentanyl mixture, *fentanyl . . .*" (emphasis added)).   Fips agreed multiple times that the facts contained in the Guilty Plea Agreement and recited by the United States were true and correct.   Doc. 92; Doc. 98 at 19:1– 27:3.   Fips admitted to distributing controlled substances, including a heroin/fentanyl mixture, to N.B. on multiple occasions.   As such, the Court rejects Fips's prosecutorial-misconduct claim.

### C.    Conflict of interest

Fips last argues that this Court erred when it failed to remove itself from his case because of a conflict of interest.   Doc. 4 at p. 1; Doc. 16 at pp. 21–26.   Fips claims that the district judge who presided over his change-of-plea hearing should have recused himself because the judge's son had recently died of a drug overdose.   However, the Court finds Fips's argument meritless.   First, the judge's son passed away in January 2018, nearly 22 months before Fips's change-of-plea hearing.   Second, neither Fips nor any of his four attorneys moved for the judge's recusal at any point during the pendency of his case.   Third, over ninety days elapsed between Fips's change-of-plea hearing and his sentencing hearing, during which Fips made no effort to withdraw his plea or question that judge's basis for recusal.   Fourth, the undersigned ultimately decided what sentence Fips should receive and whether to accept the parties' binding-plea agreement.   Last, having reviewed the entire record, the undersigned finds that Fips knowingly and voluntarily entered into his plea agreement and entered a plea of guilty.   Fips

has in no way demonstrated how the judge presiding over his change-of-plea hearing prejudiced

him in anyway.    Therefore, the Court rejects Fips's argument.

## V.    Discovery motion[7]

In July 2022, Fips filed a motion to conduct discovery pursuant to Rule 6(a) of the Rules

Governing Section 2255 Proceedings.    Doc. 14.    Fips specifically requests the following

documents:

1.  Any and all portions of the August 22, 2019, status hearing in which all counsels
    [sic] for parties were present before the Court;

2.  Any and all portions of the transcript for which any parties made any disclosures
    before the Court; and

3.  Any and all synopsis of any kind made by the Court (Judge John A. Ross) to
    any counsel or [Fips] during the August 22, 2019 hearing, outside the presence
    of the other parties.

Doc. 14 at p. 6.

Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct

discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance

with the practices and principles of law."    The Court finds that Fips has not shown good cause

for the Court to authorize discovery, and that the discovery requested is not indispensable to

Fips's ability to develop a fair, rounded presentation of the material facts.    In his filings,

particularly his reply, Fips clearly articulated arguments in support of his section 2255 motion

and in opposition to the United States' response to his § 2255 motion.    As such, the Court

denies Fips's Motion to Conduct Discovery, Doc. 14.

---

[7] All "Doc." numbers used in the "Discovery Motion" section are from *Dayon Fips v. United States*, Case No. 4:22-cr-00402-SRC.

## VI.    Conclusion

The Court finds that the record conclusively establishes that Fips is not entitled to relief. Therefore, the Court denies Fips's [1] Motion to Vacate, Set Aside, or Correct Sentence, and finds that Fips is not entitled to an evidentiary hearing.    Additionally, the Court denies Fips's [14] Motion to Conduct Discovery Pursuant to Rule 6(a).

## VII.    Certificate of Appealability

The Court further finds that Fips has not made a substantial showing of the denial of a constitutional right, and therefore, will not issue a certificate of appealability.    *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining a substantial showing is a showing the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings).

Dated this 7th day of February 2023.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE